**EMPIRE OF CAROLINA, INC., Plaintiff,**

v.

**Frank E. MACKLE, Jr., Frank E. Mackle, III, Neil E. Bahr, Thomas B. McNeill, Edgar M. Moore, William N. O'Dowd, Jr., Conrad S. Young, Topeka Group, Incorporated and the Deltona Corporation, Defendants.**

**No. 85-3254-CIV.**

United States District Court, S.D. Florida.

Oct. 18, 1985.

Barry R. Davidson, Steel Hector & Davis, Miami, Fla., for defendant Topeka Group, Inc.

Alan N. Salpeter, Paula J. Morency, Mayer, Brown & Platt, Chicago, Ill., for Deltona Directors.

Joseph Mancilla, Jr., Miami, Fla., for Deltona Corp.

David W. Trench, Rubin Baum Levin Constant Friedman & Bilzin, Miami, Fla., for plaintiff Empire of Carolina, Inc.

## ORDER COMPELLING PLAINTIFF TO PRODUCE DOCUMENTS

MARCUS, District Judge.

On October 7, 1985 Plaintiff, Empire of Carolina, Inc., filed this shareholders derivative action for injunctive and monetary relief, accompanied by a Motion for a Temporary Restraining Order and Preliminary Injunction, and a Motion for Expedited Discovery. Upon notice to all parties a hearing on Plaintiff's Motion for a Temporary Restraining Order was held before this Court on October 8, 1985. At the conclusion of that hearing, and upon the agreement of the parties, the Court declined to enter a Temporary Restraining Order, but set the cause down for a Preliminary Injunction Hearing on November 1, 1985. Moreover, all parties were ordered to submit to this Court an agreed expedited discovery schedule by October 11, 1985. On October 15th, the Court was informed that the parties had substantially agreed to the scope and scheduling of expedited discovery, but had been unable to agree to the production of several categories of documents. So that discovery could immediately commence, the Court directed the parties to submit an agreed order as to the uncontested discovery. That agreement was so ordered on October 15th.

On October 16th, at 5:30 p.m. this Court heard argument on the emergency motion of the Defendant Directors of Deltona Corporation for an order compelling the production of documents by Plaintiff, Empire of Carolina, Inc. In addition, the parties argued the motion of Plaintiff for an order compelling production of documents by Defendant Topeka Group, Inc. To permit Topeka to respond by written memorandum to Plaintiff's Motion, this Court will resolve that Motion by separate Order.

In this law suit Plaintiff seeks to enjoin a proposed transaction wherein Topeka would purchase 4,000,000 shares of a newly-created preferred stock of Deltona for $22,000,000, with an option to later purchase an additional 545,000 shares of such preferred stock. The multi-faceted terms of the proposed transaction need not be recited in detail by the Court at this juncture. What is central to Plaintiff's motion is its allegation that the Defendant's agreement permits Topeka to acquire the stock of Deltona's most profitable subsidiaries at a grossly inadequate price. Plaintiff further alleges that Defendants have secretly agreed that should the sale be accomplished, Topeka will exercise its voting rights to maintain the current directors of

Deltona in office. Plaintiff contends that the proposed transaction therefore, is a fraud upon Deltona and its stockholders designed merely to secure the positions of the individual directors.

Both Deltona and its directors have filed counterclaims which are substantially the same. (Topeka has yet to file its response to the Complaint). They allege a fraudulent scheme by Empire to seize control of Deltona for the benefit of Empire and certain Empire principles. The counterclaims make specific reference to a Schedule 13D filed by Empire with the Securities and Exchange Commission ("SEC"). Such document purportedly declares Empire's intention to secure consents from a majority of Deltona shareholders to gain control of the company by replacing the current directors. Thereafter Empire plans to liquidate the company, allowing those shareholders who so chose to receive $15 per share. Deltona and its directors seek a preliminary and permanent injunction prohibiting Empire from soliciting consents. Moreover, both Defendants raise as affirmative defenses the doctrine of unclean hands and urge that due to its purportedly fraudulent conduct, Empire cannot properly represent Deltona and its shareholders in this derivate action.

During argument on this motion, counsel for Plaintiff represented to the Court that it had only one set of documents or materials which it had refused to produce: preliminary proxy statements and materials filed with the Securities and Exchange Commission. Plaintiff argues that such documents are non-public and should be protected from discovery at least until such time as Empire actually commences a solicitation of Deltona shareholders. Empire contends that the documents are evolving and cannot be finalized or mailed to Deltona shareholders until the Securities and Exchange Commission completes its review of those materials. Plaintiff urges that disclosure prior to the completion of that review would unfairly advantage Deltona in the impending battle for control of Deltona shareholders. Moreover, Plaintiff claims that disclosure would run contrary to the SEC policy and rule that solicitation materials not be made public until the SEC has completed its review.

Plaintiff relies upon Rule 14a–6(a) enacted by the SEC under the Securities Exchange Act, 17 C.F.R. Section 240.14a–6. Rule 14a–6 requires that preliminary copies of proxy and other shareholder solication material be provided to the SEC at least 10 days prior to the date when definitive copies of such material are to be given to security holders. The rule further directs that these materials be non-public:

> "(e) All copies of material filed pursuant to paragraph (a) or (b) shall be clearly marked 'Preliminary Copies', shall be for the information of the Commission only and shall not be deemed available for public inspection before definitive material has been filed with the Commission except that such material may be disclosed to any department or agency of the United States Government and to the Congress and the Commission may make such inquiries or investigation in regard to the material as may be necessary for an adequate review thereof by the Commission. [17 C.F.R. Section 240.14a–6(e)]"

Plaintiff urges that fairness requires this Court to honor the documents' non-public status. It suggests that only upon the release of the finalized documents may Deltona fairly challenge misleading or improper representations.

This Court is not persuaded by Plaintiff's efforts to maintain the secrecy of its preliminary proxy materials in this context and at this time. At the outset, those documents seem fairly to come within the scope of discoverable evidence as defined by Rule 26(b), Federal Rules of Civil Procedure, in that they appear "reasonably calculated to lead to the discovery of admissible evidence." The essence of Plaintiff's Complaint is the charge that Deltona and its directors intend to sell its most profitable subsidiaries at a disproportionately low price, and at the same time maintain their

entrenched position of control over the company.

A wide variety of data and information may be helpful in determining the value of Deltona and its subsidiaries. In its Schedule 13D, filed with the Securities Exchange Commission, Empire has apparently expressed the belief that upon liquidation, Deltona's shares may be sold at $15. Similarly, the preliminary proxy materials *may* bear upon the valuation of Deltona stock. In short, the disclosure of these documents may lead to the discovery of admissible evidence.

Rule 26(b)(1) does except from discovery privileged matters. Plaintiff however, does not contend that the disputed documents are in any manner privileged. It claims only that the materials are non-public under Rule 14a–6(a). In no sense does that Rule prevent this Court from ordering the disclosure of otherwise discoverable evidence. Interestingly, Rule 14a–6(a) does not strictly limit disclosure to the SEC; by its own terms, it permits disclosure to any department or agency of the United States Government and to Congress.

Nor is this Court persuaded by Plaintiff's reliance upon *Edgar v. MITE Corp.*, 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982). There, the Supreme Court found an Illinois statute governing corporate takeovers preempted by its federal counterpart, the *Williams Act*, 15 U.S.C. Sections 78m(d)–(e) and 78n(d)–(f). The Supreme Court reached its conclusion after identifying three provisions of the Illinois Act which substantially frustrated the objectives of the *Williams Act*. One of those provisions was the Illinois requirement that a tender offeror notify the target company and the Secretary of State of its intent to make a tender after 20 days before the offer became effective. During that time the offeror could not communicate its offer to the shareholders, although the target company was free to disseminate information to its shareholders regarding the impending offer. The Court determined that the federal statute expressly embraced a policy of neutrality in its regulation of takeover bids. By providing the target company with additional time within which to combat a tender offer, the Illinois statute frustrated the provisions of the *Williams Act*, and thereby violated the Supremacy Clause of the Federal Constitution.

In *MITE* the High Court determined that Illinois' policy of favoring target companies by permitting their exclusive use of a tender offer for 20 days prior to becoming effective directly frustrated the Congressional goal of neutrality in the regulation of tender offers. It did not hold that disclosure to target companies of anticipated tender offers could never be made prior to the effective date. More to the point, *MITE* did not address the subject of this dispute, to wit, the disclosure of preliminary proxy materials in the case of an expedited discovery process.

The Court is mindful of the important policy considerations behind the Commission's requirement that preliminary proxy materials remain non-public during its review of those materials. Those considerations, however, should not preclude discovery here, however, where Plaintiff has initiated this action for extraordinary injunctive relief and has been permitted to conduct expedited discovery. Under normal circumstances, the parties and the Court would have had more ample opportunity to define the terms of discovery. Here, by contrast, Plaintiff has initiated an ambitious program of discovery in preparation of a November 1st preliminary injunction hearing at which time it will attempt to preliminarily enjoin a transaction worth over $22,000,000. Defendants are entitled to ample discovery so that they may fairly defend against these outstanding charges.

ACCORDINGLY, PLAINTIFF, EMPIRE OF CAROLINA, INC., IS HEREBY ORDERED to produce for Defendant Deltona Directors all preliminary proxy materials regarding the Deltona Corporation filed with the Securities Exchange Commission. Said materials shall be hand delivered to the offices of Deltona Corporation no later than noon, October 19, 1985.